SIGLOW ET AL., APPELLANTS, *v.* SMART, APPELLEE.

(No. 12844—Decided August 12, 1987.)

*Richard Sternberg,* for appellants.
*David J. Hanna,* for appellee.

GEORGE, J. Plaintiff-appellant, Gerald Siglow, was injured when he went to help his neighbor, Edward G. Smart, defendant-appellee in this case, apprehend a burglar in Smart's home. The injury occurred when the butt of a shotgun wielded by Smart in an attempt to subdue the would-be burglar struck Siglow's hand. Siglow brought suit against Smart for medical expenses and lost wages. A jury, in a general verdict untested by interrogatories, found for the defendant. This court affirms.

Siglow's three assignments of error all involve the instructions to the jury; therefore, they will be addressed together.

### Assignments of Error

"I. The trial court erred to the prejudice of the plaintiff by instructing the jury that the plaintiff would not be entitled to recover if plaintiff knowingly assumed the risk of 'any injury he received' as a consequence of entering defendant's home.

"II. The trial court committed prejudicial error by not only instructing the jury on the subject of contributory negligence, but also on the preclusive effect of recovery by the affirmative defense of assumption of the risk; the latter having been merged with the defense of contributory negligence under R.C. 2315.19, effective June 20, 1980.

"III. The trial court erred in overruling plaintiff's motion for a new

56

trial and motion for judgment notwithstanding the verdict when there was no evidence to support the general verdict for defendant based upon plaintiff's so-called assumption of the risk, and when the trial court committed error during the trial by instructing the jury on such 'nonissue' over the objection of the plaintiff."

The trial court instructed the jury, over Siglow's objection, that:

"* * * [U]nder the law, if a Plaintiff voluntarily assumes a known risk, he cannot recover. This precludes him from recovering damages for any injury which he may have received."

Siglow first argues that the instruction was erroneous because there was no evidence that he knowingly assumed the risk of the particular injury he received. There is no requirement, however, that a plaintiff anticipate the precise injury he might suffer if he persists in some apparently dangerous activity. Assumption of the risk has been defined by the Supreme Court as follows:

"* * * Assumption of the risk requires three elements: One must have full knowledge of a condition; such condition must be patently dangerous to him; and he must voluntarily expose himself to the hazard created.* * *" *Briere* v. *Lathrop Co.* (1970), 22 Ohio St. 2d 166, 174-175, 51 O.O. 2d 232, 237, 258 N.E. 2d 597, 603.

The evidence here was that Siglow was fully aware of the situation at the Smart residence. He testified he ran to the house after Mrs. Smart came running across the yard shouting, "Help, help, somebody broke in the house and they's down there fighting." He said he saw Smart and the intruder wrestling. He then attempted to help hold the intruder down. The dangerousness of the situation was obvious, yet Siglow voluntarily jumped into the fray. He assumed the risk of getting hurt. The type of injury sustained is immaterial.

The advent of comparative negligence in Ohio, however, has altered the nature of the doctrine of assumption of risk. A few months after the judgment in this case was rendered, the Ohio Supreme Court ruled that, with certain exceptions, assumption of the risk was merged with contributory negligence under R.C. 2315.19, the comparative negligence statute. *Anderson* v. *Ceccardi* (1983), 6 Ohio St. 3d 110, 6 OBR 170, 451 N.E. 2d 780. The court further ruled that the provisions of the statute would be applicable in all proceedings after the effective date of the statute (June 20, 1980). *Wilfong* v. *Batdorf* (1983), 6 Ohio St. 3d 100, 6 OBR 162, 451 N.E. 2d 1185.

The effect of such merger is to remove one type of assumption of risk from being a complete bar to recovery on a claim of injury. The merger provided that this type of assumption of the risk is to be viewed as a species of negligence and weighed against the negligence of the plaintiff according to the procedure set forth in R.C. 2315.19. *Mitchell* v. *Ross* (1984), 14 Ohio App. 3d 75, 14 OBR 87, 470 N.E. 2d 245. If Siglow's conduct falls within this type then a jury instruction which provides that a finding of assumption of the risk will preclude recovery for the plaintiff would be erroneous. However, it is necessary to analyze *Anderson, supra,* to determine exactly what type of conduct was merged, as well as the type of conduct excluded from the merger.

The comparative negligence statute abrogates contributory negligence as a complete bar to recovery where both the plaintiff and defendant have been negligent. It directs apportionment of negligence among the parties where the plaintiff's negligence is deemed to be no greater than the combined negligence of all other parties. R.C. 2315.19. In embracing a comparative fault system, the legislature clearly recognized that it is fundamentally

unfair for one person to bear the total burden of damages for which two people are responsible. Its intent was to alleviate the harsh all-or-nothing result which freed a negligent tortfeasor of all liability for his actions, despite the fact that the plaintiff's negligence may have been relatively minor.

Although the statute makes no mention of assumption of risk, the Supreme Court in *Anderson, supra,* concluded that the apportionment concept should be extended to some cases in which assumption of risk is raised as a complete defense. The court's discussion in *Anderson* makes it clear that the type of assumption of risk which is being merged with contributory negligence is the type that is almost indistinguishable from the affirmative defense of contributory negligence. This type is known as secondary or unreasonable assumption of risk. 1 Budman, Comparative Negligence (1985) 4-40, Section 4.20(1)[b][ii].

That the two defenses often overlapped has long been recognized by Ohio courts. See, *e.g., Masters* v. *New York Central RR. Co.* (1947), 147 Ohio St. 293, 34 O.O. 223, 70 N.E. 2d 898. Contributory negligence embodies some fault or departure from the standard of reasonable conduct. *Id.* Assumption of the risk, on the other hand, involves knowledge of the danger and intelligent acquiescence in it. *Id.* The two overlap where a plaintiff's conduct in accepting a risk is in itself unreasonable — that is, the danger is out of all proportion to the interest the plaintiff seeks to advance. *Id.* Before comparative negligence was adopted this overlap posed no problem because both defenses stood as absolute bars to a plaintiff's recovery. Now, however, the *Anderson* court noted that:

"* * * [C]ontinued adherence to the differentiation of the doctrines can lead to the anomalous situation where a defendant can circumvent the comparative negligence statute entirely by asserting the assumption of risk defense alone. We do not believe that the General Assembly intended such a result in its enactment of R.C. 2315.19 * * *." *Id.* at 113, 6 OBR at 173, 451 N.E. 2d at 783.

To extend the comparative negligence apportionment concept to secondary (unreasonable) assumption of risk is logical, since this branch of assumption of risk is analytically and functionally similar to contributory negligence. A plaintiff's unreasonable conduct in assuming the risk can be compared to that of a negligent defendant in the same manner as his contributorily negligent conduct. Budman, *supra,* at 4-46. What the Supreme Court then merged with contributory negligence in *Anderson, supra,* was that form of assumption of risk which overlaps and coincides with contributory negligence — that is, secondary or unreasonable assumption of risk.

The Supreme Court specifically excluded from the merger two other types of assumption of risk — express assumption of risk and primary assumption of risk. Both of these types then remain as complete bars to recovery. This court must determine if the present situation fits within either of these exceptions.

The first, express assumption of risk, is easily identified. As the court phrased it:

"* * * Express assumption of risk would arise where a person expressly contracts with another not to sue for any future injuries which may be caused by that person's negligence * * *." *Anderson, supra,* at 114, 6 OBR at 174, 451 N.E. 2d at 783.

Since this type of assumption of risk is based in contract and is indicative of a deliberate choice by the plaintiff to relieve the defendant of his legal duty toward the plaintiff, it has retained its viability as an absolute defense even within the comparative negligence system. See 3 Speiser,

Krause & Gans, The American Law of Torts (1986) 808, Section 13:39. Express assumption of risk is either oral or written consent to a dangerous activity or condition. That was not the situation here.

The other type excluded from merger is primary assumption of risk. The Supreme Court spoke of primary assumption of risk as the type "* * * which concerns cases where there is a *lack of duty owed by the defendant to the plaintiff.* This type of assumption of risk is typified by the baseball cases where a plaintiff is injured when a baseball is hit into the stands. * * *" (Emphasis added.) Anderson, *supra,* at 114, 6 OBR at 174, 451 N.E. 2d at 783.

The court cited *Cincinnati Base Ball Club Co.* v. *Eno* (1925), 112 Ohio St. 175, 180-181, 147 N.E. 86, 87, for the standard applicable in the baseball cases:

" 'The consensus of * * * opinions is to the effect that it is common knowledge that in baseball games hard balls are thrown and batted with great swiftness, that they are liable to be thrown or batted outside the lines of the diamond, and that spectators in positions which may be reached by such balls assume the risk thereof.' " *Anderson, supra,* at 114, 6 OBR at 174, 451 N.E. 2d at 784.

Although not cited in *Anderson,* this statement is also found in *Cincinnati Base Ball Club Co.:*

"It is the general rule, also, so far as screening the grandstand is concerned, that due care on the part of the management does not require all of the spectators to be screened in; that the management performs its duty toward the spectators when it provides screened seats in the grandstand and gives spectators the opportunity of occupying them. The record shows that in the instant case the management had performed this duty." *Id.* at 181, 147 N.E. at 87.

This court discussed this "no-duty" primary assumption of risk in *Mima* v. *Akron* (1986), 31 Ohio App. 3d 124, 31 OBR 211, 508 N.E. 2d 974. Citing Budman, *supra,* at 4-36, Section 4.20[2][b][i], this court concluded that:

"Primary assumption of risk is really an alternative expression for the concept that a defendant either owed no duty of care to the plaintiff or did not breach any duty owed. * * * Primary assumption of risk has nothing to do with plaintiff's conduct." (Citations omitted.) *Mima, supra,* at 125, 31 OBR at 212, 508 N.E. 2d at 975.

In *Mima,* this court concluded that the city had breached no duty to the plaintiff, a trespasser who entered upon city property for the express purpose of destroying above-ground manholes and who was injured when the structure collapsed upon him as he was striking it. The court concluded:

"Where no duty is breached, there is no liability. Whether the trial court characterized this as primary assumption of the risk or as a necessary element to establish negligence is unimportant to this analysis. The result is the same. * * *" *Id.* at 127, 31 OBR at 213, 508 N.E. 2d at 977.

The facts of the current case present this court with the opportunity to consider another facet of primary assumption of risk — that is, reasonable assumption of risk. Siglow, responding to Mrs. Smart's cries that a burglar was in the house and fighting with her husband, went to the aid of his neighbor. Although the evidence is conflicting as to whether or not Smart was actually in any danger, Siglow perceived Smart to be in a position of peril. Siglow did not know the would-be burglar was an acquaintance of Smart. He did not know, as Smart did, that the gun was one Smart kept, unloaded, under his bed. Siglow's assumption of the risk to himself in entering into the conflict was rea-

sonable, considering his perception that Smart's physical well-being and possibly even his life were in danger.

As noted above, the *Anderson* court merged secondary assumption of risk because it was simply a variant of contributory negligence in that it encompassed unreasonable conduct, or lack of due care for one's safety, in assuming the risk. It follows, then, that reasonable conduct in assuming the risk, involving no lack of care on the part of the plaintiff, is included within the category of primary assumption of risk.

Unreasonable assumption of risk sounds in negligence. Reasonable assumption of risk, entailing a reasonable and voluntary exposure to an obvious or known danger, sounds in waiver and consent — not fault. A plaintiff who reasonably chooses to proceed in the face of a known risk is deemed to have relieved defendant of any duty to protect him. See *Vargus* v. *Pitman Mfg. Co.* (E.D. Pa. 1981), 510 F. Supp. 116, affirmed (1981), 673 F. 2d 1301, rehearing denied (1982), 675 F. 2d 73; *Smith* v. *Seven Springs Farms, Inc.* (C.A. 3, 1983), 716 F. 2d 1002; *Keegan* v. *Anchor Inns, Inc.* (C.A. 3, 1979), 606 F. 2d 35. See, also, Annotation (1982), 16 A.L.R. 4th 700, at 711, Section 4. This type of assumption of risk, wherein one reasonably waives or otherwise relieves another of liability for injuries which might result from patently dangerous conduct or activities, is conceptually equivalent to express assumption of risk.

The rationale behind the distinction made in the treatment of reasonable and unreasonable conduct in assuming a risk is that an individual should be fully responsible for his conscious, knowledgeable choices, whereas responsibility should be shared where negligence is demonstrated as to both parties. This reasoning supports a conclusion that reasonable assumption of risk should be retained as a complete bar to recovery.

For the above reasons, this court finds that under the facts of this case the trial court did not err in giving an instruction on assumption of risk as a total bar to recovery, or in denying motions for a new trial and judgment notwithstanding the verdict which were based in the allegedly erroneous instruction. The assignments of error are overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

MAHONEY, J., concurs in judgment only.

QUILLIN, P.J., dissents.

QUILLIN, P.J., dissenting. Even under Smart's version of the facts, Siglow's conduct did not amount to express or primary assumption of the risk. I would reverse.