BORCHERS et al., Appellants,

v.

WINZELER EXCAVATING COMPANY, Appellee.

[Cite as *Borchers v. Winzeler Excavating Co.* (1992), 83 Ohio App.3d 268.]

Court of Appeals of Ohio,
Montgomery County.

No. 13297.

Decided Oct. 20, 1992.

*James T. Ambrose* and *Frank A. Malocu,* for appellants.

*Robert J. Surdyk,* for appellee.

BROGAN, Judge.

This is an appeal from the judgment of the Montgomery County Court of Common Pleas granting appellee, Winzeler Excavating Company ("Winzeler"), summary judgment.

This case arose from a fall which occurred on Sudbury Drive in Kettering, Montgomery County, Ohio. On April 25, 1989, appellant Ethel V. Borchers drove to 3200 Sudbury Drive to visit her mother. When Mrs. Borchers first arrived that day, she parked in her mother's driveway. At some time later in the visit, Mrs. Borchers left her mother's house. When she returned, she parked her vehicle on the street rather than in her mother's driveway.

Mrs. Borchers left her mother's house once again in order to retrieve a shirt from her car. After getting the shirt, Mrs. Borchers was proceeding from her car back toward the driveway of her mother's house when she slipped and fell in the street in front of her car.

At the time of Mrs. Borchers' fall, a sewer line was being installed in the vicinity of Sudbury Drive. Due to the sewer line construction, portions of Sudbury Drive were torn up. The road in front of Mrs. Borchers' mother's house was one of the portions that was torn up. During her deposition, Mrs. Borchers testified that there were large and small pieces of gravel lying in the road and, according to her, this loose gravel caused her fall.

On April 24, 1991, Mrs. Borchers and her husband, Robert L. Borchers, filed a complaint in the Common Pleas Court of Montgomery County, Ohio, against Winzeler. In their first claim for relief, the Borcherses alleged that on or about October 1988, Winzeler entered into a contract with the government of Montgomery County, Ohio, to install new sanitary sewers in the city of Kettering, Ohio. According to the Borcherses, this contract included the installation of a sanitary sewer in the neighborhood of Kettering in which they and Mrs. Borchers' mother live.

The Borcherses alleged that Mrs. Borchers was injured when she fell over debris that had been left on Sudbury Drive. According to the Borcherses, the placement and removal of the debris was the sole responsibility of Winzeler. At paragraph 5 of their complaint, the Borcherses alleged as follows:

"As a direct and proximate result of the Defendant's negligence and due directly to its failure to warn this Plaintiff of the existence of a hazardous condition, and as a direct and proximate result of the Defendant's failure to keep the premises in a reasonably safe condition, and due to Defendant's failure to keep the travel [*sic*] portions of Sudbury free and clear of debris, the Plaintiff

incurred severe injuries to her knees and lower extremity which required her to seek and obtain medical attention and treatment."

The Borcherses also claimed that Winzeler could reasonably have foreseen that Mrs. Borchers' injuries would result as a probable consequence of the alleged failure of Winzeler to exercise ordinary care in the performance of its work.

In their second claim for relief, the Borcherses presented a claim for medical expenses. In addition, Mr. Borchers asserted a claim for loss of consortium. In the third claim for relief, Mr. Borchers asserted a claim for damage to his truck allegedly caused by Winzeler.

On November 18, 1991, Winzeler filed a motion for summary judgment with the trial court. In a decision filed January 29, 1992, the trial court sustained Winzeler's motion for summary judgment against Mrs. Borchers and against Mr. Borchers on his claim for loss of consortium. The trial court ordered that these claims be dismissed. The trial court ordered that Mr. Borchers' claim for damage to his automobile be referred to arbitration.

On February 24, 1992, the Borcherses filed a notice of appeal from the judgment and final order entered January 29, 1992. On March 3, 1992, Winzeler filed a motion to dismiss this appeal for lack of a final appealable order, since the Borcherses' third claim for relief remained pending and the trial court had not included the "no just cause for delay" language required by Civ.R. 54(B). When Mr. Borchers voluntarily withdrew his property damage claim with prejudice, this court then had jurisdiction to consider the appeal of the trial court's judgment.

In their sole assignment of error, appellants raise three issues to support their contention that the trial court erred in granting summary judgment in favor of Winzeler. First, they contend that assumption of the risk is a question of fact for the jury. Second, they contend that reasonable minds can come to different conclusions as to any negligence or knowledge of any risk allegedly assumed by Mrs. Borchers and, finally, they contend that the trial court failed to construe the evidence most strongly in favor of the nonmoving party, as required by Civ.R. 56(C).

It is well settled that a summary judgment is appropriate when it appears "(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47, and further that "a reviewing court, upon appeal from a summary judgment, should look at the record in the light most favorable to the party opposing the motion." *Engel v.*

*Corrigan* (1983), 12 Ohio App.3d 34, 12 OBR 121, 465 N.E.2d 932, paragraph one of the syllabus. In addition to these two principles, the Ohio Supreme Court has stated that "a motion for summary judgment forces the nonmoving party to produce evidence on any issue for which that party bears the burden of production at trial. (*Celotex v. Catrett* [1986], 477 U.S. 317 [106 S.Ct. 2548, 91 L.Ed.2d 265], approved and followed.)" *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus. See, also, *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 526 N.E.2d 798.

In its decision filed January 29, 1992, the trial court stated the following:

"The Court concludes that there is no genuine issue of material fact and that Defendant is entitled to judgment as a matter of law.

"Mr. [*sic*] Borchers saw what was in the path she would take from her car to her mother's and had made the trip earlier in the day across the same area.

"Superior knowledge of a danger gives rise to the duty to warn. Here, Plaintiff could see the area about which she now complains and had been across it once.

"The Court concludes that with the knowledge she had that Plaintiff assumed a reasonable risk and her recovery should be barred.

"Unreasonable assumption of risk sounds in negligence. Reasonable assumption of risk, entailing a reasonable and voluntary exposure to an obvious or known danger, sounds in waiver and consent—not fault. A plaintiff who reasonably chooses to proceed in the face of a known risk is deemed to have relieved defendant of any duty to protect him. See *Vargus v. Pitman Mfg. Co.* (E.D.Pa. 1981), 510 F.Supp. 116, affirmed (1981), 673 F.2d 1301, rehearing denied (1982), 675 F.2d 73; *Smith v. Seven Springs Farms, Inc.* (C.A.3, 1983), 716 F.2d 1002; *Keegan v. Anchor Inns, Inc.* (C.A.3, 1979), 606 F.2d 35. See, also, Annotation (1982), 16 A.L.R.4th 700, at 711, Section 4. This type of assumption of risk, wherein one reasonably waives or otherwise relieves another of liability for injuries which might result from patently dangerous conduct or activities, is conceptually equivalent to express assumption of risk.

"The rationale behind the distinction made in the treatment of reasonable and unreasonable conduct in assuming a risk is that an individual should be fully responsible for his conscious, knowledgeable choices, whereas responsibility should be shared where negligence is demonstrated as to both parties. This reasoning supports a conclusion that reasonable assumption of risk should be retained as a complete bar to recovery."

In *Anderson v. Ceccardi* (1983), 6 Ohio St.3d 110, 6 OBR 170, 451 N.E.2d 780, the Ohio Supreme Court held that the defense of assumption of risk is merged with the defense of contributory negligence under R.C. 2315.19. In *Anderson*,

the plaintiff brought suit against the defendant Ceccardi, who was the plaintiff's landlord and who allegedly failed to repair front steps to the home Anderson leased from Ceccardi after Anderson had repeatedly told Ceccardi that the steps were in need of repair. Anderson alleged that he was injured when the steps collapsed as he was using them.

The court held that "[t]he conduct previously considered as assumption of risk by the plaintiff shall be considered by the trier of fact under the phrase 'contributory negligence of the person bringing the action' under R.C. 2315.19, and the negligence of all parties shall be apportioned by the court or jury pursuant to that statute." *Anderson* at 113, 6 OBR at 173, 451 N.E.2d at 782. Justice A.W. Sweeney further explained at 114, 6 OBR at 174, 451 N.E.2d at 783–784:

"The foregoing merger of assumption of risk with contributory negligence is not intended to merge that category of assumption of risk known as 'express' assumption of risk. Express assumption of risk would arise where a person expressly contracts with another not to sue for any future injuries which may be caused by that person's negligence. This view is in accord with the decisions of other jurisdictions which have merged assumption of risk with contributory negligence. See *Gilson* [*v. Drees Bros.* (1963), 19 Wis.2d 252, 120 N.W.2d 63], *supra*; *Springrose* [*v. Willmore* (1971), 292 Minn. 23, 192 N.W.2d 826], *supra*; *Lyons* [*v. Redding Const. Co.* (1973), 83 Wash.2d 86, 515 P.2d 821], *supra*.

"Additionally, our merger of the two doctrines is not intended to merge that type of assumption of risk defined as 'primary assumption of risk,' which concerns cases where there is a lack of duty owed by the defendant to the plaintiff. This type of assumption of risk is typified by the baseball cases where a plaintiff is injured when a baseball is hit into the stands. This standard was stated in dicta in the case of *Cincinnati Base Ball Club Co. v. Eno* (1925), 112 Ohio St. 175, 180–181 [147 N.E. 86, 87], as follows:

" 'The consensus of * * * opinions is to the effect that it is common knowledge that in baseball games hard balls are thrown and batted with great swiftness, that they are liable to be thrown or batted outside the lines of the diamond, and that spectators in positions which may be reached by such balls assume the risk thereof.' " (Footnote omitted.)

The trial court appears to have rendered its decision in this matter upon the authority of *Siglow v. Smith* (1987), 43 Ohio App.3d 55, 539 N.E.2d 636, cited by the defendant in its memorandum in support of its motion for summary judgment. In that case, the Summit County Court of Appeals held that reasonable assumption of risk, entailing a reasonable and voluntary exposure to an obvious or known danger, is included in the category of primary assumption of risk, and

is retained as a complete bar to recovery. In writing for the majority of the court, Judge George wrote the following:

"As noted above, the *Anderson* court merged secondary assumption of risk because it was simply a variant of contributory negligence in that it encompassed unreasonable conduct, or lack of due care for one's safety, in assuming the risk. It follows, then, that reasonable conduct in assuming the risk, involving no lack of care on the part of the plaintiff, is included within the category of primary assumption of risk.

"Unreasonable assumption of risk sounds in negligence. Reasonable assumption of risk, entailing a reasonable and voluntary exposure to an obvious or known danger, sounds in waiver and consent—not fault. *A plaintiff who reasonably chooses to proceed in the face of a known risk is deemed to have relieved defendant of any duty to protect him.* See *Vargus v. Pitman Mfg. Co.* (E.D.Pa. 1981), 510 F.Supp. 116, affirmed (1981), 673 F.2d 1301, rehearing denied (1982), 675 F.2d 73; *Smith v. Seven Springs Farms, Inc.* (C.A.3, 1983), 716 F.2d 1002; *Keegan v. Anchor Inns, Inc.* (C.A.3, 1979), 606 F.2d 35. See, also, Annotation (1982), 16 A.L.R.4th 700, at 711, Section 4. This type of assumption of risk, wherein one reasonably waives or otherwise relieves another of liability for injuries which might result from patently dangerous conduct or activities, is conceptually equivalent to express assumption of risk.

"The rationale behind the distinction made in the treatment of reasonable and unreasonable conduct in assuming a risk is that an individual should be fully responsible for his conscious, knowledgeable choices, whereas responsibility should be shared where negligence is demonstrated as to both parties. This reasoning supports a conclusion that reasonable assumption of risk should be retained as a complete bar to recovery." (Emphasis added.) *Id.,* 43 Ohio App.3d at 59, 539 N.E.2d at 640.

■ The Ohio Supreme Court in *Anderson* did not discuss the type of primary assumption of risk mentioned in the *Siglow* decision, *i.e.,* where a person reasonably exposes himself to a known danger, except in the sense typified by the baseball game. In baseball games, management performs its duty towards spectators when it provides screened seats in the grandstand and gives spectators the opportunity of occupying them. See *Cincinnati Base Ball Club Co. v. Eno* (1925), 112 Ohio St. 175, 147 N.E. 86. "The timorous may stay at home." *Murphy v. Steeplechase Amusement Co.* (1929), 250 N.Y. 479, 166 N.E. 173.

Professor Keeton discusses three categories of implied assumption of risk as evidenced by various court decisions. See Prosser & Keeton on Torts (5 Ed.1984) 496. Those categories are (1) primary, (2) unreasonable assumption of

risk, and (3) reasonable assumption of risk. Professor Keeton writes at 497 of the treatise:

"Reasonable Assumption of Risk. Arguments similar to those that support treating unreasonable assumption of risk as a total bar continue when the plaintiff's deliberate choice is instead completely reasonable. Yet where the defendant's negligence has forced the plaintiff into a situation where he must reasonably choose to undergo the risk, there seems to be a fundamental flaw in reasoning that the plaintiff should thereby be held to have forfeited any right to charge the defendant for his resulting injuries. It would thus appear quite odd if the plaintiff's reasonable assumption of the risk to which he was exposed by the negligence of the defendant were treated as an absolute bar. Nor logically should it even factor in to reduce the plaintiff's damages, since his conduct has by definition been free from blame. Moreover, as some have noted, there would be a strange anomaly if a plaintiff who negligently assumed the risk recovered part of his damages, but the plaintiff who reasonably did so recovered none."

In *Duffy v. Midlothian Country Club* (1985), 135 Ill.App.3d 429, 90 Ill.Dec. 237, 481 N.E.2d 1037, the court held that primary implied assumption of risk applies to situations where the plaintiff has assumed no risks inherent in a particular activity or situation, and the assumed risks are those created not by the defendant's negligence, but rather by the nature of the activity itself. In *Duffy*, the Illinois Court of Appeals affirmed a judgment for a plaintiff who lost sight in her right eye after being hit by a golf ball at a golf tournament. The court noted the following:

"Under the implied form of assumption of risk, plaintiff's willingness to assume a known risk is determined from the conduct of the parties rather than from an explicit agreement. The implied form of the doctrine has itself been subdivided into primary and secondary categories. The primary label has been applied to situations where a plaintiff has assumed known risks inherent in a particular activity or situation. *The assumed risks there are not those created by defendant's negligence but rather by the nature of the activity itself.* Thus, primary implied assumption of risk is, arguably, not a true negligence defense since no cause of action for negligence is ever alleged. Kionka, *Implied Assumption of the Risk: Does It Survive Comparative Fault?* 1982 S.Ill.L.J. 371." (Emphasis added.) *Id.*, 135 Ill.App.3d at 433, 90 Ill.Dec. at 241, 481 N.E.2d at 1041.

In an almost Alice in Wonderland script, under implied assumption of risk, plaintiffs who have acted reasonably in assuming a risk face a complete bar to recovery, while plaintiffs who have acted unreasonably benefit from comparative-fault principles and may recover substantial portions of their damages. Diamond, Assumption of Risk After Comparative Negligence: Integrating Contract Theory into Tort Doctrine (1991), 52 Ohio St.L.J. 717, 724.

Critics attack this by arguing that the defense of reasonable implied assumption of risk must be abolished to "prevent this illogical and grossly inequitable result of preventing recovery by a plaintiff who acts reasonably, but allowing it to a plaintiff who acts unreasonably." Van Eman, Ohio's Assumption of the Risk: The Deafening Silence (1982), 11 Cap.U.L.Rev. 661, 679.

Professor Fleming James, Jr. discussed the adoption of 3 Restatement of the Law 2d, Torts (1965), Sections 496A through 496G, in a law review article shortly after its adoption. James, Assumption of Risk: Unhappy Reincarnation (1968), 78 Yale L.J. 185. Section 496C provides that "a plaintiff who fully understands a risk * * * caused by the defendant's conduct or by the condition of the defendant's land or chattels, and who nevertheless voluntarily chooses to enter or remain * * * within the area of that risk, under circumstances that manifest his willingness to accept it, is not entitled to recover for harm within that risk."

James wrote that "[t]he *Restatement* and its adherents concede that most of the situations enumerated in Bohlen's original article [Voluntary Assumption of Risk (1906), 20 Harv.L.Rev. 14, 19–21] and in *Harper and James* [Law of Torts (1956) 1165–1168] do not involve the *voluntary* assumption of risk. These are cases in which defendant's wrong may be said to restrict unduly plaintiff's freedom of choice or to put him in a kind of duress; in them a plaintiff will not be barred simply because he knowingly incurs the risk (unless his conduct is *unreasonable* under the circumstances)." (Footnotes deleted.) James, *supra*, 78 Yale L.J. at 199. The list includes the use of a highway by a traveler, use of an improperly impeded access to plaintiff's own property, and cases where defendant's wrong injures plaintiff where he has a right to be without regard to defendant's consent.

Professor James points out that Comment *d* to Section 496E "states that if plaintiff 'acts unreasonably in making his choice, he may be barred from recovery either by his assumption of risk or by his contributory negligence in failing to exercise reasonable care for his safety.' Apparently, the *reasonable* choice of the more dangerous alternative will not bar recovery. * * * [T]he apparent meaning of the comment's text is fortified by a passage and note in the Reporter's treatise. '[W]here a reasonable alternative is left open * * * [plaintiff's] unreasonable insistence upon unnecessarily encountering danger becomes contributory negligence; and under one name or the other, the choice of a dangerous highway * * * will bar his recovery. In this area it is reasonably clear that assumption of risk and contributory negligence always coincide, and it is relatively unimportant which the defense is called.' PROSSER, TORTS 467–68 (3d ed. 1964.)" (Emphasis *sic*.) James, 78 Yale L.J. at 189, fn. 18.

Professor James disagreed that assumption of risk in the special Restatement sense (*i.e.*, the reasonable assumption of a risk negligently created) could be seen

as a "no-duty" case. James perceived the Restatement view as a departure from the trend toward wider compensation at least of innocent victims of negligent conduct discernible in the decade preceding the second Restatement. He saw this reversal as a minor tragedy. *Id.* at 196–197.

In *Segoviano v. Hous. Auth. of Stanislaus Cty.* (1983), 143 Cal.App.3d 162, 191 Cal.Rptr. 578, the California Court of Appeals held that the defense of reasonable implied assumption of the risk plays no part in the comparative negligence system of California. The court held that "it is neither a bar to plaintiff's recovery on the theory that it forecloses the existence of a duty of care by the defendant toward the plaintiff nor is it a partial defense justifying an allocation of a portion of the fault for the accident to the plaintiff on the theory that he or she was contributorily negligent in confronting the risk. It is only when the defendant proves that the plaintiff's decision to participate in the activity was *unreasonable* that a jury may allocate damages between the plaintiff and the defendant. Such an allocation is permissible because the defendant has proved that the plaintiff was negligent." (Emphasis *sic.*) *Id.* at 164, 191 Cal.Rptr. at 579–580.

Ohio has recognized that defendants have no duty of care to plaintiffs who have expressly assumed the risk that they may be injured by the defendant's conduct. Ohio also recognizes that in a certain class of activities, the courts do not want to impose liability for risks inherent or frequently associated with certain activities. See *Anderson, supra.*

In all other contexts, comparative negligence contributes to accident avoidance by encouraging both parties to avoid injuries despite the possible presence of contributory negligence. Professor Diamond points out that the popularity of comparative negligence is derived from an uneasiness with placing responsibility for unintended accidents on only one party, when responsibility is in fact shared. In "implied assumption of risk" there is no clear expression of contractual intent and "reasonable" assumption of risk like other factors such as relative causation, can affect the allocation of responsibility between the defendant and plaintiff. Diamond, *supra,* 52 Ohio St.L.J. at 750.

In *Stanton v. Miller* (1990), 66 Ohio App.3d 201, 583 N.E.2d 1080, the Hamilton County Court of Appeals held that diving into an above-ground swimming pool was not primary assumption of risk that would bar a negligence action. The court noted that the risk of injury while diving into a shallow pool was not so inherent as to relieve pool operators from any duty whatsoever to all divers. The court held that a genuine issue existed as to whether the plaintiff implicitly assumed the risks of diving into the shallow water. The court noted that implied assumption of the risk is, on the other hand, defined as the plaintiff's consent to or acquiescence in an appreciated, known or obvious risk to the plaintiff's safety.

The court noted that this type of assumption of the risk recognizes the existence of a duty owed by the defendant to the plaintiff but held that the plaintiff's acquiescence in or appreciation of the known risk may be invoked as a defense to the plaintiff's action.

Recently the Ohio Supreme Court in *Simmers v. Bentley Constr. Co.* (1992), 64 Ohio St.3d 642, 597 N.E.2d 504, held that an independent contractor who creates a dangerous condition on real property is not relieved of liability under the doctrine that exonerates an owner or occupier of land from the duty to warn those entering the property concerning open and obvious dangers on the property.

In *Simmers*, the plaintiff was injured when he fell through a hole in a bridge walkway created when the defendant's front-end loader fell through the boards of the walkway. The defendant was under contract with CSX Transportation, Inc. to remove cross-ties, spikes, and plates near the bridge owned by CSX.

The trial court granted summary judgment in favor of Bentley on the ground that the hole was open and obvious. The court of appeals reversed the trial court and remanded the matter for trial of genuine issues of material fact.

In affirming the court of appeals, the Ohio Supreme Court was not persuaded to extend the doctrine of open and obvious hazards to persons who conduct activity with the consent of the landowner but who themselves have no property interest in the premises.

The court noted that Bentley conceded for purposes of the appeal that it created the hole and that it was a dangerous condition. The court thus found that Bentley owed a duty of care to users of the bridge. Justice Herbert R. Brown then noted:

"In essence, Bentley argues that Stephen was negligent in failing to protect himself from an open and obvious danger and that his negligence proximately caused his own injuries. A plaintiff's contributory negligence, however, does not automatically bar recovery for damages directly and proximately caused by the defendant's negligence. R.C. 2315.19(A)(2)."

We agree with the appellants that there are genuine issues of fact for resolution by a jury of whether the appellee Winzeler breached its duty of care to the Borcherses, (2) whether Mrs. Borchers was contributorily negligent or assumed the risk of her own injury, (3) the extent to which the negligence of Winzeler or Mrs. Borchers was the proximate cause of her alleged injuries, and (4) what percentage of each party's negligence proximately caused the injury.

We cannot say, as appellee urges, that the evidence is clear that Mrs. Borchers was more negligent as a matter of law than Winzeler. Issues of comparative

negligence are for the jury to resolve unless the evidence is so compelling that reasonable minds can reach but one conclusion. *Hitchens v. Hahn* (1985), 17 Ohio St.3d 212, 17 OBR 447, 478 N.E.2d 797. The appellants' three assignments of error are sustained. The judgment of the trial court is reversed and the cause is remanded for further proceedings.

*Judgment reversed*
*and cause remanded.*

WILSON and GRADY, JJ., concur.