

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
{¶1} 614.387.9800 or 1.800.824.8263
{¶2} www.cco.state.oh.us

EMILY AUSTIN

    Plaintiff

    v.

MIAMI UNIVERSITY

    Defendant
Case No. 2013-00078-AD

Deputy Clerk Daniel R. Borchert

<u>MEMORANDUM DECISION</u>

## FINDINGS OF FACT

{¶1}   1)    On November 9, 2012 at approximately 7:00 p.m., plaintiff, Emily Austin, suffered personal injury during pre-game warm ups prior to an intercollegiate hockey game at the ice arena located on the campus of defendant, Miami University ("M.U."). Plaintiff stated during pre-game warm ups "a puck left the ice and struck her in the head."

{¶2}   2)    Plaintiff contended defendant should bear liability for the medical expenses she incurred after being struck by a hockey puck during the pre-game warm ups prior to a game at the M. U. Ice Arena. Also, in the complaint plaintiff acknowledges she maintains health insurance with a $200.00 deductible provision and admitted she has received $600.00 from her insurer[1] "as a result of the described

---

[1] R.C. 2743.02(D) states:

"(D) Recoveries against the state shall be reduced by the aggregate of insurance proceeds, disability award, or other collateral recovery received by the claimant. This division does not apply to civil actions in the court of claims against a state university or college under the circumstances described in section 3345.40 of the Revised Code. The collateral benefits provisions of division (B)(2) of that section

incident above." The filing fee was paid.

{¶3} 3) Defendant denied liability in this claim based on the contention plaintiff assumed the risk of being struck by a hockey puck when she attended the November 9, 2012 hockey game, thereby constituting a complete bar to recovery as a matter of law.

{¶4} 4) Defendant noted that M.U.'s "hockey arena is protected by 8' boards and end zone nets equal to or greater than the standard hockey arenas." Also, defendant "makes public announcements during hockey games warning spectators to remain alert for flying pucks." Finally, M.U. asserted the plaintiff assumed the risk by attending the hockey game and any injury she suffered was not due to the negligence of defendant.

{¶5} 5) Plaintiff filed a response to defendant's investigation report stating her injury occurred during warm ups prior to the game.

CONCLUSIONS OF LAW

{¶6} 1) Primary assumption of the risk is a defense generally applied in cases where there is a lack of duty owed by the defendant to plaintiff and is a complete

---

apply under those circumstances."
R.C. 3345.40(B)(2) states:
"(B) Notwithstanding any other provision of the Revised Code or rules of a court to the contrary, in an action against a state university or college to recover damages for injury, death, or loss to persons or property caused by an act or omission of the state university or college itself, by an act or omission of any trustee, officer, or employee of the state university or college while acting within the scope of his employment or official responsibilities, or by an act or omission of any other person authorized to act on behalf of the state university or college that occurred while he was engaged in activities at the request or direction, or for the benefit, of the state university or college, the following rules shall apply:
"(2) If a plaintiff receives or is entitled to receive benefits for injuries or loss allegedly incurred from a policy or policies of insurance or any other source, the benefits shall be disclosed to the court, and the amount of the benefits shall be deducted from any award against the state university or college recovered by the plaintiff. No insurer or other person is entitled to bring a civil action under a subrogation provision in an insurance or other contract against a state university or college with respect to such benefits. Nothing in this division affects or shall be construed to limit the rights of a beneficiary under a life insurance policy or the rights of sureties under fidelity or surety bonds."

bar to recovery. *Anderson v. Ceccardi,* 6 Ohio St. 3d 110, 114, 45 N.E. 2d 780 (1983). "In that form, while there is a knowledge of the danger and acquiescence in it on the part of plaintiff, there is also no duty owed by defendant to plaintiff." *Willoughby v. Harrison Radiator Div. of General Motors Corp.*, 2nd Dist. No. 11225 (May 11, 1989). This type of assumption of the risk is typified by the baseball cases where a plaintiff is injured when a baseball is hit into the stands. *Anderson*, at 114, citing *Cincinnati Baseball Club Co. v. Eno*, 112 Ohio St. 175, 147 N.E. 86 (1925).

{¶7}   2)     Also, it has been determined, under the doctrine of primary assumption of the risk, that an individual injured while engaged in a recreational activity is generally barred from recovery because she is presumed to have assumed the ordinary risks of that activity unless it can be proved another individual acted recklessly or intentionally in causing the injury claimed. *Marchetti v. Kalish*, 53 Ohio St. 3d 95, 559 N.E. 2d 699 (1990); *Gentry v. Craycraft*, 101 Ohio St. 3d 141, 2004-Ohio-379, 802 N.E. 2d 1116. The doctrine of primary assumption of the risk serves to remove liability for mere negligence under the circumstances involving recreational activity injuries. The trial court applied a three-part test for primary assumption of the risk set forth in *Gallagher v. Cleveland Browns Football Co., Inc.*, 93 Ohio App. 3d 449, 638 N.E. 2d 1082 (8th Dist. 1994), reversed on other grounds, 74 Ohio St. 3d 427, 1996-Ohio-320, 659 N.E. 2d 1232. The test requires that: 1) the danger is ordinary to the game; 2) it is common knowledge that the danger exists; and 3) the injury occurs as a result of the danger during the course of the game.

{¶8}   3)     It is well settled that spectators attending baseball games who are injured by batted balls flying into the stands are denied recovery based on the primary assumption of the risk doctrine. The following standard was enunciated in *Cincinnati Baseball Club Co.*, in regard to the spectators assumption of the risk at a baseball game. "The consensus of *** opinions is to the effect that it is common knowledge that

in baseball games hard balls are thrown and batted with great swiftness, that they are liable to be thrown or batted outside the limits of the diamond, and that spectators in positions which may be reached by such balls assume the risk thereof" at 180-181. Furthermore, in *Borchers v. Winzler Excavating Co.*, 83 Ohio App. 3d 268, 273, 614 N.E. 2d 1065 (2nd Dist. 1992), the court stated: "In baseball games, management performs its duty towards spectators when it provides screened seats in the grandstand and gives spectators the opportunity of occupying them." *Cincinnati Baseball Club.*

{¶9} 4)    "The nature of the sporting activity is highly relevant in defining the duty of care owed by a particular defendant: 'What constitutes an unreasonable risk under the circumstances of a sporting event must be delineated with reference to the way the particular game is played, i.e., the rules and customs that shape the participant's ideas of foreseeable conduct in the course of the game.'" *Bundschu v. Naffah*, 147 Ohio App. 3d 105, 112, 2002-Ohio-607, 768 N.E. 2d 1215 (citation omitted). Any analysis of primary assumption of the risk turns on whether or not the injured spectator was subjected to risk or hazards that a reasonable participant would or would not expect to encounter in the particular sporting activity.

{¶10} 5)    In reference to the instant claim, the court can find no different between baseball and hockey when applying the doctrine of primary assumption of the risk to spectators who are injured by flying objects leaving the area of play and entering the stands. Whether the spectator is hit by a flying puck or a flying baseball, the situations are analogous when applying the law. There is no obligation on the part of the operator of a hockey game such as M.U. to protect a spectator against being hit by a flying puck, a danger incident to the entertainment, which any reasonable spectator could and did foresee. Evidence has shown defendant did take measures by erecting glass and boards around the perimeter of the Ice Arena to provide some safety to spectators from errant pucks. Nevertheless, pucks do enter the stands; an inherent risk

in the game of hockey, which is common, expected, and frequent. The baseball rule of primary assumption of the risk is applicable to hockey. See *Nungester v. Risk Management,* 2007-03196-AD, 2008-Ohio-1214. The facts of the instant action establish the danger of flying pucks was so open and obvious to plaintiff that she assumed the risk of injury therefrom. Consequently, plaintiff's claim is denied since defendant owed her no duty to protect her from the known danger presented.

[Cite as *Austin v. Miami Univ.*, 2013-Ohio-5925.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

EMILY AUSTIN

Plaintiff

v.

MIAMI UNIVERSITY

Defendant

Case No. 2013-00078-AD

Deputy Clerk Daniel R. Borchert

## ENTRY OF ADMINISTRATIVE DETERMINATION

Having considered all the evidence in the claim file and, for the reasons set forth in the memorandum decision filed concurrently herewith, judgment is rendered in favor of defendant. Court costs are assessed against plaintiff.

_____
DANIEL R. BORCHERT
Deputy Clerk

Entry cc:

Emily Austin
215 Jeniford Road
Fairfield, Connecticut 06824

David K. Creamer, Vice President for
Finance and Business Services
Miami University
218 Roudebush Hall
Oxford, Ohio 45056

DRB/laa
filed 8/13/13
sent to S.C. Reporter 1/30/14