[Cite as *Ellis v. Greater Cleveland R.T.A.*, 2014-Ohio-5549.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 101169

**DAWN ELLIS, INDIVIDUALLY
AND AS ADMINISTRATOR OF THE
ESTATE OF CHARLES BERRY, DECEASED**

PLAINTIFF-APPELLANT

vs.

**GREATER CLEVELAND R.T.A., ET AL.**

DEFENDANTS-APPELLEES

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-12-784493

**BEFORE:** Celebrezze, P.J., Jones, J., and E.A. Gallagher, J.

**RELEASED AND JOURNALIZED:** December 18, 2014

**ATTORNEY FOR APPELLANT**

Michael D. Goldstein
Goldstein & Goldstein Co., L.P.A.
55 Public Square
Suite 2075
Cleveland, Ohio   44113


**ATTORNEYS FOR APPELLEES**

Sheryl King Benford
General Counsel, G.C.R.T.A.
Keith A. Ganther
Associate Counsel, G.C.R.T.A.
6th Floor, Root-McBride Building
1240 West 6th Street
Cleveland, Ohio   44113

Colleen A. Mountcastle
Joseph W. Pappalardo
Gallagher Sharp
Sixth Floor, Bulkley Building
1501 Euclid Avenue
Cleveland, Ohio   44115

FRANK D. CELEBREZZE, JR., P.J.:

{¶1} Plaintiff-appellant Dawn Ellis ("appellant") appeals the judgment of the common pleas court granting summary judgment in favor of defendants-appellees, the Greater Cleveland Regional Transit Authority ("GCRTA") and Katherine Underwood. After a careful review of the record and relevant case law, we affirm the trial court's judgment.

## I.   Statement of the Facts

{¶2} At approximately 5:30 p.m. on July 21, 2011, Charles Berry arrived at the Nighttown Restaurant to have dinner with his colleague Mark Ansboury. Ansboury left Berry alone at Nighttown at approximately 8:00 p.m. Berry advised that he would walk or take the train to get home. Berry frequently used the rapid transit as a means for transportation because the East 120th Street station was less than a ten-minute walk from his house. According to the bartender at Nighttown, Berry paid his check at approximately 11:30 p.m. Berry then made his way to the GCRTA train station on East 120th Street.

{¶3} That evening, Katherine Underwood was operating the Red Line train, traveling westbound en route to the GCRTA's Central Rail Headquarters. Underwood testified that as she approached the East 120th Street train station, she was traveling at a rate of speed in the range of 15 to 25 m.p.h. Underwood testified that her headlights were on their "bright" setting, and there were no obstructions preventing her from seeing anything at track level. Just moments before arriving at the station, Underwood observed Berry "stumble onto the tracks" from an area adjacent to the station platform. Underwood testified at her deposition that on seeing Berry, she blew the train horn and applied the train's emergency breaks. However, Underwood was unable to stop the train before it struck and ultimately killed Berry.

**{¶4}** GCRTA Transit Police Officers Todd Miller and Jason Anderson were the first to respond to the scene of the accident. Officer Miller testified that when he arrived at the scene, Underwood was lying on the floor of the train's cabin in the fetal position, crying and in shock. Berry's body was discovered at the track level pinned between the platform and the train car. Cleveland police officers also inspected the scene and concluded that Berry was likely attempting to climb onto the platform at the time he was struck.

## II. Statement of the Case

**{¶5}** Appellant, individually and as administrator of the estate of Charles Berry, deceased, initiated this wrongful death case on June 7, 2012, by filing a complaint in the common pleas court (Cuyahoga C.P. No. CV-12-784493). Therein, she set forth causes of action in wrongful death, survivorship, and loss of consortium, alleging that GCRTA employee, defendant Katherine Underwood, "negligently, carelessly, recklessly, willfully, and/or wantonly" operated the rapid transit train that struck and killed Charles Berry on July 21, 2011. Appellant further alleged GCRTA was liable for the negligence of its employee, Underwood, pursuant to R.C. 2744.02(B)(1)-(2). On July 18, 2013, appellant filed an amended complaint, restating all of the original claims and including a claim against GCRTA for negligence in the design and maintenance of its East 120th Street Red Line rapid transit station.

**{¶6}** On November 14, 2013, motions for summary judgment were filed on behalf of GCRTA and Underwood. On January 15, 2014, appellant filed briefs in opposition. On March 14, 2014, the trial court issued an opinion and entered judgment in favor of GCRTA and Underwood, stating that the defendants were entitled to judgment as a matter of law on the issues of negligence and wrongful death. The court determined that appellant could not establish a

prima facie case and dismissed all claims based on the defense of assumption of the risk and the

open and obvious doctrine.

{¶7} Appellant brings this timely appeal, raising two assignments of error for review:

I.   The trial court erred in granting defendant-appellee GCRTA's motion for summary judgment.

II.  The trial court erred in granting defendant-appellee Katherine Underwood's motion for summary judgment.

### III. Law and Analysis

### A. Standard of Review

{¶8} This court reviews the grant of summary judgment de novo.  *Brown v. Cty. Commrs.*, 87 Ohio App.3d 704, 622 N.E.2d 1153 (4th Dist.1993).

> Civ.R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that: (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977).

{¶9} It is well established that the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988).  In *Dresher v. Burt*, 75 Ohio St.3d 280, 662 N.E.2d 264 (1996), the Ohio Supreme Court modified and clarified the summary judgment standard as applied in *Wing v. Anchor Media, Ltd. of Texas*, 59 Ohio St.3d 108, 570 N.E.2d 1095 (1991). Under *Dresher*, "the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine

issue of fact on a material element of the nonmoving party's claim." *Id*. at 296. The nonmoving party has a reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. *Id.* at 293. The nonmoving party must set forth "specific facts" by the means listed in Civ.R. 56(C) showing that a genuine issue for trial exists. *Id*.

### B. Negligence and Primary Assumption of the Risk

{¶10} In her first assignment of error, appellant argues that the trial court erred in granting summary judgment in favor of GCRTA on the basis of primary assumption of the risk and the open and obvious doctrine. Appellant contends that by applying these defenses to the facts of this case, the trial court "essentially created a rule that eliminates any duty from train operators to keep a lookout ahead as they approach stations." We disagree.

{¶11} In the case at hand, appellant alleged that GCRTA was liable for (1) the negligence of its employee, Katherine Underwood, pursuant to R.C. 2744.02(B)(1)-(2), and (2) acted negligently in the design and maintenance of its East 120th Street Red Line rapid transit station.

{¶12} "[T]o establish a cause of action for negligence, the plaintiff must show (1) the existence of a duty, (2) a breach of duty, and (3) an injury proximately resulted therefrom." *Armstrong v. Best Buy Co., Inc*., 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, ¶ 8. "[P]rimary assumption of risk, when applicable, prevents a plaintiff from establishing the duty element of a negligence case." *Stewart v. Urig*, 176 Ohio App.3d 658, 2008-Ohio-3215, 893 N.E.2d 245, ¶ 25 (9th Dist.), quoting *Gallagher v. Cleveland Browns Football Co.*, 74 Ohio St.3d 427, 433, 659 N.E.2d 1232 (1996). Thus, when the defense applies, it prevents the plaintiff from making a prima facie case and functions as a complete bar to a negligence claim as a matter of law. *Gallagher* at 432.

{¶13} Under primary assumption of the risk, a person assumes the inherent risks of certain activities and cannot recover for injuries in the absence of another's reckless or intentional conduct. *Crace v. Kent State Univ.*, 185 Ohio App.3d 534, 2009-Ohio-6898, 924 N.E.2d 906, ¶ 13 (10th Dist.). Underlying this judicially created doctrine is the notion that certain risks are so inherent in some activities that the risk of injury cannot be avoided. *Id.* Thus, "[a] plaintiff who reasonably chooses to proceed in the face of a known risk is deemed to have relieved defendant of any duty to protect him." *Siglow v. Smart*, 43 Ohio App.3d 55, 59, 539 N.E.2d 636 (9th Dist.1987).

{¶14} In order to succeed on a primary assumption of the risk defense, it must be shown that the plaintiff: (1) had full knowledge of a condition; (2) such condition must be patently dangerous to him or her; and (3) he or she must voluntarily expose himself or herself to the hazard created. *Briere v. Lathrop Co.*, 22 Ohio St.2d 166, 174-175, 258 N.E.2d 597 (1970). "[P]rimary assumption of [the] risk requires an examination of the activity itself and not plaintiff's conduct. If the activity is one that is inherently dangerous and from which the risks cannot be eliminated, then a finding of primary assumption of [the] risk is appropriate." *Crace* at ¶ 16.

{¶15} In granting summary judgment in favor of GCRTA, the trial court relied on this court's opinion in *Miljkovic v. Greater Cleveland Regional Transit Auth.*, 8th Dist. Cuyahoga No. 77214, 2000 Ohio App. LEXIS 4780 (Oct. 12, 2000), for the proposition that crossing or walking on a railroad track is an inherently dangerous activity subject to the primary assumption of the risk defense.

{¶16} In *Miljkovic*, this court upheld the entry of summary judgment in favor of GCRTA based on the doctrine of primary assumption of the risk where the plaintiff was severely injured

by an oncoming train while attempting to cross train tracks. The court explained that the defense applied because the plaintiff had full knowledge of the potential risks and consequences of crossing the train tracks, but nevertheless voluntarily chose to cross the tracks instead of using the nearby overpass. *Id*. at *14-16.

{¶17} In contrast, appellant relies on *Gladon v. Greater Cleveland Regional Transit Auth.*, 75 Ohio St.3d 312, 662 N.E.2d 287 (1996), arguing that, regardless of Berry's conduct, Underwood owed a duty to use ordinary care to avoid injuring Berry from the point she observed him on the tracks. *See id.* at 318 ("When a trespasser or licensee is discovered in a position of peril, a landowner is required to use ordinary care to avoid injuring him"). However, *Gladon* did not involve the application of the primary assumption of the risk defense and does not impact our resolution of this case. In our view, *Gladon* stands for the proposition that, although a landowner usually only owes a trespasser a duty to refrain from willful, wanton, or reckless conduct that is likely to injure the trespasser, that duty enhances to a standard of ordinary care once the trespasser is discovered. However, *Gladon* does not alter the longstanding precedent that a defendant owes no duty of care to an individual who voluntarily engages in an inherently dangerous activity, even if he is a discovered trespasser. Had the injured party in *Gladon* entered the path of the train voluntarily (he was pushed or kicked onto the tracks), the primary assumption of the risk defense likely would have been raised and upheld.

{¶18} After a careful review of the record in its entirety, we find the trial court's reliance on *Miljkovic* to be appropriate. We are not persuaded by appellant's position that the act of standing on an active railroad track is not patently dangerous or that Berry was not aware of the dangers of walking on the tracks. In our view, the act of crossing an active railroad track is an inherently dangerous activity. *See Cave v. Burt*, 4th Dist. Ross No. 03CA2730,

2004-Ohio- 3442, ¶ 19 ("Riding on a car's trunk lid, like rope swinging, bungee bouncing, or crossing railroad tracks, is inherently dangerous and the risks associated with it cannot be eliminated"); *see also Jones v. Norfolk S. Ry. Co.*, 8th Dist. Cuyahoga No. 84394, 2005-Ohio-879, ¶ 14 ("A moving train is not a subtle or hidden danger and its potential for causing serious bodily injury or death to anyone in its path is readily apparent, even to young children").

**{¶19}** Further, the record supports the trial court's determination that Berry understood the inherent danger of crossing the tracks but voluntarily exposed himself to the known risk at the time of the accident. Berry was an educated 42-year-old man who was familiar with the rapid transit trains, having used them as a mode of transportation prior to the accident. Moreover, GCRTA maintenance worker Michael Lowrie and GCRTA Rail Transportation Manager John Fedikovich testified that GCRTA has posted "do not trespass" and "no cross" signs at the East 120th Street station and advises the public in a safety brochure located inside each train to "stay clear and off the tracks at all times." Despite these warnings, Berry had a history of crossing the tracks, as evidenced by Sergeant Michael McGinty's deposition testimony that appellant told him Berry commonly took shortcuts to catch the train because he did not like walking down Euclid Avenue.[1]

**{¶20}** For these reasons, we find that the trial court did not err in granting summary judgment in favor of GCRTA based on the doctrine of primary assumption of risk. Because the doctrine of primary assumption of risk bars the appellant's negligence claims against GCRTA, it

---

[1] In a journal entry dated February 10, 2014, the trial court found appellant's statements to Sergeant McGinty to be admissible.

is not necessary to address the standard of care or the trial court's alternative reliance on the open and obvious doctrine.

{¶21} Appellant's first assignment of error is overruled.

### C. Intentional or Reckless Conduct

{¶22} In her second assignment of error, appellant argues that the trial court erred in granting summary judgment in favor of Katherine Underwood. Appellant contends that the trial court improperly applied the defense of primary assumption of risk and the open and obvious doctrine to her allegations that Underwood operated the train in a willful, wanton, and reckless manner.

{¶23} In the instant case, appellant brought allegations of recklessness against Underwood in order to avoid her immunity under R.C. 2744.03(A)(6)(b), which provides that an employee of a political subdivision is immune from liability "unless the employee's acts * * * were with malicious purpose, in bad faith, or in a wanton or reckless manner."

{¶24} While the defense of primary assumption of risk acts as a complete bar to negligence claims, courts have routinely held that it is not a defense to conduct that is intentional or reckless. *White v. Elias*, 8th Dist. Cuyahoga No. 97734, 2012-Ohio-3814, ¶ 40 ("Under primary assumption of the risk, a person assumes the inherent risks of certain activities and cannot recover for injuries in the absence of another's reckless or intentional conduct"), citing *Crace,* 185 Ohio App.3d 534, 2009-Ohio-6898, 924 N.E.2d 906, ¶ 13; *Gallagher v. Cleveland Browns Football Co.*, 93 Ohio App.3d 449, 463, 638 N.E.2d 1082 (8th Dist.1994), *rev'd on other grounds,* 74 Ohio St.3d 427, 659 N.E.2d 1232 (1996) ("the defense of primary assumption of risk does not apply when the acts of the defendant are willful, wanton or reckless"). Similarly, the open and obvious doctrine has served to preclude negligence claims, not reckless,

wanton, or intentional conduct claims. Thus, the trial court erred in applying the doctrines to appellant's allegations against Underwood, and we must review Underwood's conduct to determine whether summary judgment in her favor was appropriate.

{¶25} Here, we will not address whether Underwood's conduct was intentional because this issue has not been raised on appeal. Instead, the issue is whether Underwood acted recklessly, causing Berry's injuries.

{¶26} In *O'Toole v. Denihan*, 118 Ohio St.3d 374, 2008-Ohio-2574, 889 N.E.2d 505, ¶ 73-75, the Supreme Court of Ohio discussed "recklessness" as follows:

> In *Thompson v. McNeill*, 53 Ohio St.3d 102, 559 N.E.2d 705 (1990), we held that an actor's conduct "is in reckless disregard of the safety of others if he does an act * * * knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent." *Id.* at 104-105, 559 N.E.2d 705, quoting 2 Restatement of the Law 2d, Torts (1965) 587, Section 500. Distilled to its essence, and in the context of R.C. 2744.03(A)(6)(b), recklessness is a perverse disregard of a known risk.
>
> Recklessness, therefore, necessarily requires something more than mere negligence. * * * In fact, "the actor must be conscious that his conduct will in all probability result in injury."

(Citations omitted.)

{¶27} Viewing the evidence in a light most favorable to appellant, we find no evidence in the record to support the position that Underwood consciously disregarded a known risk of physical harm to others as she approached the East 120th Street station platform. In an attempt to demonstrate Underwood's reckless conduct, appellant relies extensively on the expert report of Augustine Ubaldi and Jay Pollack. In their report, Ubaldi and Pollack opined that Underwood "was the cause of this incident" because she "unreasonably": (1) failed to maintain a proper lookout, (2) failed to identify Berry's presence at the time he first became visible, and (3) failed

to react in a timely manner from the time Berry became readily visible. Ubaldi and Pollack based their opinion on their belief that "a reasonably observant train operator" would have been able to see Berry's location near the platform from at least 270 feet away, a distance they believe gave Underwood enough time to stop the train before hitting Berry. Thus, appellant maintains that "the evidence supports a finding that Underwood was speeding and/or not paying attention."

{¶28} In our view, however, the expert report of Ubaldi and Pollack does not establish, or even contend, that Underwood acted recklessly. Instead, their expert report amounted to assertions that Underwood, at most, negligently failed to perform to the standards of a "reasonably observant train operator," a claim Underwood is immune from under R.C. 2744.03(A)(6) and that we have already determined was barred by the defense of primary assumption of the risk.

{¶29} We recognize that the determination of recklessness is typically within the province of the jury. However, the standard for showing recklessness is high and, given the facts of this case, we are unable to conclude that Underwood's conduct demonstrated a disposition to perversity. Accordingly, we find that the evidence does not support a claim of recklessness as defined above. Therefore, the trial court did not err in granting summary judgment in favor of Underwood.

{¶30} Appellant's second assignment of error is overruled.

{¶31} Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


FRANK D. CELEBREZZE, JR., PRESIDING JUDGE

LARRY A. JONES, SR., J., and
EILEEN A. GALLAGHER, J., CONCUR