**HESSELBACH**

v.

**TOLEDO MUSEUM OF ART et al.**

Court of Common Pleas of Ohio,
Lucas County.

No. CI94–2513.

Decided June 27, 1995.

34

*Howard Abramoff,* for plaintiff.

*M. Donald Carmin* and *Teresa Grigsby,* for defendants.

JUDITH ANN LANZINGER, Judge.

This case is now before the court on separate motions for summary judgment filed by defendants, the Toledo Museum of Art and Rudolph–Libbe, Inc. After reviewing the pleadings, briefs of the parties, and all materials which have been submitted pursuant to Civ.R. 56(E), the court grants both motions.

I

Claire Hesselbach originally filed this wrongful death action as case No. CI93–0409 on February 11, 1993 on behalf of herself, and as executor of the estate of her husband. Charles Hesselbach died February 16, 1991 after falling from a scaffold while he was installing wall fabrics at the museum. Plaintiff dismissed the earlier action voluntarily without prejudice and refiled it on September 17, 1993. She alleges that the museum and Rudolph–Libbe were negligent by failing to maintain proper and adequate safeguards over the ladders and scaffolds at the site. The dangerous and unsafe working area, she asserts, proximately caused her husband's fatal injury. Both defendants denied the allegations and filed separate motions for summary judgment.

II

A motion for summary judgment will be granted only when, after the record evidence is read most favorably for the opposing party, there is no genuine issue over any material fact and the party filing the motion is entitled to judgment as a matter of law. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47–48; Civ.R. 56(C). A motion for summary judgment forces the party opposing the motion to produce evidence on any issue for which that party bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of syllabus.

## The Museum's Motion

In its motion for summary judgment, the museum points out that it contracted separately with Charles Hesselbach, d.b.a. C.L. Hesselbach Co., and with Rudolph–Libbe for certain renovations to be made to the museum building. Under the Hesselbach contract, Hesselbach was engaged as an independent contractor to hang wall fabric in certain areas of the museum. The museum did not participate in Hesselbach's work and had no supervisory authority over him. John S. Stanley, assistant director for operations of the Toledo Museum of Art, states in the last paragraph of his June 24, 1993 affidavit:

"The Toledo Museum of Art had no supervisory personnel on the job, did not provide any equipment or tools and did not provide the scaffolding from which C.L. Hesselbach fell. In addition, The Toledo Museum of Art was not advised of the method and manner in which C.L. Hesselbach Company was attempting to hang wall fabric at the Toledo Museum or the tools, structures and scaffoldings that he was using."

## Rudolph–Libbe's Motion

Rudolph–Libbe maintains that as the construction manager it owed no duty to the plaintiff's decedent. Rudolph–Libbe had no contract with C.L. Hesselbach Co., did not control the activities of Charles Hesselbach and did not participate in his work. Rudolph–Libbe emphasizes the inherently dangerous nature of the fabric installation work Hesselbach was performing when he fell from the scaffold. The affidavits of Patrick Bolger and D. Scott Cunningham, Rudolph–Libbe employees, are offered along with the various contract documents to support Rudolph–Libbe's claim that no material issues of fact exist and that it is entitled to judgment as a matter of law.

### Plaintiff's arguments

Plaintiff argues in response to the motions that the court should not determine whether a duty of care was breached, but simply whether a duty of care exists.[1] She relies on one of the Ohio "frequenter" statutes, specifically R.C. 4101.11[2] and also maintains that there are questions over who had control over the museum premises and whether her husband's work carried inherent risk.

---

1. Plaintiff also contends that summary judgment is premature and suggests in her brief in opposition that she be allowed further time to depose employees of the two defendants. The appropriate motion under Civ.R. 56(F) was never filed, however, and plaintiff is therefore expected to come forth with appropriate evidence to withstand summary judgment rather than merely rely on her allegations. See *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus.

2. R.C. 4101.11 provides: "Every employer shall furnish employment which is safe for the employees engaged therein, shall furnish a place of employment which shall be safe for the

### III

■ No one disputes that Hesselbach was an employee of an independent contractor. Ordinarily, a hiring party is not liable for injuries sustained by such an employee when the independent contractor is engaged to perform an inherently dangerous task. *Wellman v. E. Ohio Gas Co.* (1953), 160 Ohio St. 103, 51 O.O. 27, 113 N.E.2d 629, paragraph one of the syllabus. In this situation, primary responsibility for protecting the employee lies with the independent contractor itself. *Eicher v. United States Steel Corp.* (1987), 32 Ohio St.3d 248, 512 N.E.2d 1165.

■ There is an exception to the general rule of no responsibility. An employer may take on the risk of liability for injury or death of an independent contractor's employees if that employer actually participates in the job operation performed and, in doing so, fails to eliminate a hazard which could have been eliminated by using ordinary care. *Hirschbach v. Cincinnati Gas & Elec. Co.* (1983), 6 Ohio St.3d 206, 6 OBR 259, 452 N.E.2d 326, syllabus. An employer does not participate in a job simply by maintaining a supervisory capacity over a subcontractor's work. *Cafferkey v. Turner Constr. Co.* (1986), 21 Ohio St.3d 110, 21 OBR 416, 488 N.E.2d 189.

■ The frequenter statutes on which plaintiff rests her position simply codify common law. The duty of furnishing a safe work place under R.C. 4101.11 does not extend to cover inherent dangers when an injured person is an employee of an independent contractor. *Eicher v. United States Steel Corp.* (1987), 32 Ohio St.3d 248, 512 N.E.2d 1165. This is due to the risky nature of the work to be done. *Schwarz v. Gen. Elec. Co.* (1955), 163 Ohio St. 354, 56 O.O. 319, 126 N.E.2d 906.

In this case, although plaintiff does not concede that Hesselbach was engaged in an inherently dangerous task when he was injured, she offers no evidence to show it was *not* inherently dangerous. Furthermore, she does not show that either of the defendants joined in the task of fabric wall hanging during any point in the project. There was no sign that either defendant created a hazard which caused Hesselbach's death.

■ Plaintiff suggests the matter of inherent risk is an open question, relying on *Mersits v. Podojil Bldrs., Inc.* (1989), 64 Ohio App.3d 266, 581 N.E.2d 562, a case in which a worker was injured when a door jamb came apart while he

---

employees therein and for frequenters thereof, shall furnish and use safety devices and safeguards, shall adopt and use methods and processes, follow and obey orders, and prescribe hours of labor reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters."

was trying to move it. In *Mersits,* the Court of Appeals for Cuyahoga County found a fact issue over whether the accident came within the inherent-risk exemption. Here, to the contrary, Hesselbach was working on a scaffold, hanging fabric on walls in the museum. This is not a usual or common undertaking or one allowing an unskilled laborer to participate in the operation. Neither the museum nor Rudolph–Libbe owed a duty to the independent contractor for injuries that result from risks inherent in the subcontractors's assigned task. See, *e.g., Curless v. Lathrop* (1989), 65 Ohio App.3d 377, 389, 583 N.E.2d 1367, 1375–1376. Evidence offered by affidavit shows that neither the museum nor Rudolph–Libbe interfered with, supervised or participated in Hesselbach's specialized work.

◼ Plaintiff also contends that there are questions over who had responsibility for the custody and control of the premises at the museum building. Even if this were considered an open issue, it is not material to deciding these motions. Rudolph–Libbe's position as contract manager at the site did not expand its duty over independent contractors. As the Supreme Court of Ohio has held that in *Kucharski v. Natl. Eng. & Contracting Co.* (1994), 69 Ohio St.3d 430, 633 N.E.2d 515, syllabus:

"An independent contractor who lacks a contractual relationship with a second independent contractor owes no affirmative duty beyond that of ordinary care to the employees of the second contractor, where the first contractor does not supervise or actively participate in the second contractor's work. (*Cafferkey v. Turner Constr. Co.* [1986], 21 Ohio St.3d 110, 21 OBR 416, 488 N.E.2d 189, approved and followed.)"

The record evidence shows no contract between Hesselbach and Rudolph–Libbe, no active participation by either the museum or Rudolph–Libbe in Hesselbach's inherently dangerous work, and no hint of a lapse in ordinary care.

◼ Plaintiff refers to an unauthenticated "OSHA report," which may not be considered by the court under Civ.R. 56(C)[3] since the document was not submitted through a properly framed affidavit.[4] *Martin v. Cent. Ohio Transit Auth.* (1990), 70 Ohio App.3d 83, 89, 590 N.E.2d 411, 415; *Biskupich v. Westbay Manor Nursing Home* (1986), 33 Ohio App.3d 220, 222, 515 N.E.2d 632, 633–634.

---

**3.** Civ.R. 56(C) provides:

" * * * Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule."

**4.** Plaintiff presented no affidavits whatsoever in response to defendants' motions.

Moreover, Rudolph–Libbe offers a supplemental affidavit in reply to plaintiff's brief in opposition and clarifies certain of plaintiff's speculations.[5]   There is no material which may be considered under Civ.R. 56(C) which connects either defendant with the scaffold owned by Speiker Company from which Hesselbach fell.

When all evidence is viewed most favorably for plaintiff, the court finds as a matter of law that defendants are entitled to judgment in their favor.

*Judgment for defendants.*

---

5.   Specifically, Patrick Bolger, Rudolph–Libbe's superintendent on the project, explains that the scaffold Hesselbach chose to use in Gallery 31 on the date of the accident was owned by Speiker Company and was used as a dolly for storage of its carpentry materials.   No one from Rudolph–Libbe had disassembled any portion of the scaffold beforehand.