Gareth BLEVINS, Plaintiff,

v.

John DOE, et al., Defendant.

No. 3:02 CV 7079.

United States District Court, N.D. Ohio, Western Division.

Sept. 2, 2003.

Scott Bowling, Randall L. Lambert, Lambert, McWhorter & Bowling, Ironton, OH, for Plaintiff.

Robert B. Fitzgerald, III, Baran Piper Tarkowsky Fitzgerald & Theis, Lima, OH, Donald E. Theis, Baran Piper Tarkowsky Fitzgerald & Theis, Toledo, OH, for Defendant.

## MEMORANDUM OPINION

KATZ, District Judge.

This matter is before the Court on Defendant's motion for summary judgment (Doc. No. 28), as to which Plaintiff has filed a response (Doc. No. 39) and Defendant has filed a reply (Doc. No. 52). Plaintiff has also filed another response (Doc. No. 56), as to which Defendant has filed another reply (Doc. No. 58) and Plaintiff has filed an additional response (Doc. No. 60).

This Court has jurisdiction to decide this matter pursuant to 28 U.S.C. § 1332. For the reasons stated below, Defendant's motion will be denied.

### BACKGROUND

Plaintiff Gareth Blevins ("Blevins"), a union traveler pipefitter/welder since approximately 1989 or 1990, was hired in August 1999 by Jacobs Engineering Group, Inc. ("Jacobs"), the general contractor for a project at the Akzo Nobel plant (the "project") in Lima, Ohio. Defendant United/Anco Services, Inc. ("United/Anco"), the successor-in-interest to Goedecke, Inc., was a sub-contractor of Jacobs responsible for construction, modification and removal of all scaffolding. The contract between United/Anco and Jacobs was a time and materials contract under which Jacobs controlled the number of Defendant's employees at the project, and the placement and modification of any scaffolding. When the need to modify scaffolding would arise, a Jacobs' foreman would contact Gilbert Noel ("Noel"), United/Anco's supervisor for the project. The Jacobs' foreman would inform Noel of the type of modification, and the approximate amount of time that would be needed. Noel would in turn have United/Anco carpenters make the requested changes. Jacobs would then notify Noel when the modification was no longer necessary, and he would then direct Defendant's carpenters to return the scaffolding to its original condition.

On January 3, 2000, at approximately 7:30 a.m. Charley Bowen ("Bowen"), the Jacobs foreman, under whom Plaintiff was working that day, instructed Noel to temporarily remove some handrailings from the scaffolding where Blevins and another

pipefitter were working, to permit the delivery and placement of a pipe.[1] Plaintiff, who was working as a welder's helper that day, was wearing his hard hat, and was tied-off with a harness and lanyard Jacobs had provided. Along with removing the railings, United/Anco also placed a yellow tag on the scaffolding noting the restriction due to this modification. The railings were still missing when Blevins and his co-worker returned from lunch. It was also raining. To afford them some protection from the elements, Plaintiff reached up to move a plastic cover, which was above them on the next level, when a bolt fell from above striking him in the forehead. As a consequence, Blevins stepped backward and fell off the scaffold onto a tank below, resulting in bodily injury. The incident occurred around 1:30 p.m.

Plaintiff filed the instant action alleging that United/Anco was negligent in failing to replace the handrails in a timely manner. Defendant seeks summary judgment on a number of grounds, including *inter alia* primary assumption of risk, no duty and/or no breach thereof under the circumstances, lack of proximate cause, superceding/intervening act(s) and Plaintiff's own negligence outweighing any on Defendant's part under the rubric of comparative negligence.

### DISCUSSION

#### A. SUMMARY JUDGEMENT STANDARD

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its

motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323–25, 106 S.Ct. 2548. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (*quoting* FED.R.CIV.P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *see also Harris v. General Motors Corp.,* 201 F.3d 800, 802 (6th Cir.2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences there-

---

1. The scaffolding was comprised of two scaf-  folds that were close to each other.

from in a light most favorable to the non-moving party." *Williams v. Belknap*, 154 F.Supp.2d 1069, 1071 (E.D.Mich.2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987)). However, " 'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,' " *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir.1994) (quoting *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505); therefore, "[t]he Court is not required or permitted ... to judge the evidence or make findings of fact." *Williams*, 154 F.Supp.2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F.Supp.2d 928, 930 (S.D.Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir.2000).

## B. PRIMARY ASSUMPTION OF RISK

■ United/Anco argues that Blevins' previous safety training and other relevant experience as welder/pipefitter, including familiarity with the code/tagging system for construction scaffolding, and the Jacobs safety orientation provided to project employees, demonstrate the applicability of the doctrine of primary assumption of risk. (Doc. No. 30, Blevins Dep., pp. 44–47). In so doing, Defendant emphasizes that Plaintiff was aware that the railings had been removed, and that their absence created a hazard. *Id.* at 76, 79, 109. In *Anderson v. Ceccardi*, 6 Ohio St.3d 110, 451 N.E.2d 780, 783 (1983), the Supreme Court of Ohio stated:

[T]he defense of assumption of risk is merged with the defense of contributory negligence under R.C. 2315.19. The conduct previously considered as assumption of risk by the plaintiff shall be considered by the trier of fact under the phrase "contributory negligence of the person bringing the action" under R.C. 2315.19, and the negligence of all parties shall be apportioned by the court or jury pursuant to that statute.

The *Anderson* court, however, also held that said merger did not include two classes of assumption of risk, express and primary. *Id.* Primary assumption of risk "concerns cases where there is a lack of duty owed by the defendant to the plaintiff." *Id.* Primary assumption of risk "is really a principle of no duty, or no negligence, and so denies the existence of any underlying cause of action." *Gallagher v. Cleveland Browns Football Co.*, 74 Ohio St.3d 427, 659 N.E.2d 1232, 1236 (1996) (citation omitted). It has been otherwise stated that "[p]rimary assumption of risk is invoked where the activity undertaken involves such obvious and unavoidable risks that no duty of care is said to attach." *Holmes v. Health & Tennis Corp. of Am.*, 103 Ohio App.3d 364, 659 N.E.2d 812, 813 (1995). Primary assumption of risk has been described as a legal fiction whereby a "plaintiff has tacitly consented to the risk." *Collier v. Northland Swim Club*, 35 Ohio App.3d 35, 518 N.E.2d 1226, 1228 (1987). "[W]hen a plaintiff is found to have made a primary assumption of risk in a particular situation, that plaintiff is totally barred from recovery, as a matter of law, just as he or she would have been before *Anderson.*" *Gallagher*, 659 N.E.2d at 1236.

"Reasonable assumption of risk, which entails a reasonable and voluntary exposure to obvious or known danger, has been characterized as a form of primary assumption of risk based on its conceptual equivalency to express assumption of risk." *Hansen v. Flying J. Travel Plaza*, 57 Fed.

Appx. 214, 215, 2003 WL 103073, at *2 (6th Cir.2003) (citing *Siglow v. Smart*, 43 Ohio App.3d 55, 539 N.E.2d 636, 640–41 (1987)). A classic application of a plaintiff's primary assumption of risk is where a baseball is hit (or thrown) into the stands during the course of a game. *Cincinnati Baseball Club v. Eno*, 112 Ohio St. 175, 147 N.E. 86, 87 (1925); *Whiting v. Aerni*, No. 73323, 1998 WL 741937, at *2–3 (Ohio App. 8th Dist. Oct. 22, 1998). In fact, the *Gallagher* court noted that *Anderson* relied on *Eno* for the proposition that primary assumption of risk was not merged with contributory negligence under O.R.C. § 2315.19. *Gallagher*, 659 N.E.2d at 1237.[2]

In *Siglow*, the court upheld a verdict in favor of the defendant, finding that primary assumption of risk barred recovery where the plaintiff's hand was struck by the butt of shot gun when he intervened in an attempt to apprehend a burglar in his neighbor's home. *Siglow*, 539 N.E.2d at 637. The *Siglow* court stated:

> The facts of the current case present this court with the opportunity to consider another facet of primary assumption of risk—that is, reasonable assumption of risk. [The plaintiff], responding to Mrs. Smart's cries that a burglar was in the house and fighting with her husband, went to the aid of his neighbor. Although the evidence is conflicting as to whether or not Smart was actually in any danger, [the plaintiff] perceived Smart to be in a position of peril. Siglow did not know the would-be burglar was an acquaintance of Smart. He did not know, as Smart did, that the gun was one Smart kept, unloaded, under his bed. [Plaintiff's] assumption of the risk to

United/Anco also directs the Court to *Fulton v. McCarthy Bros. Co.*, No. 69900, 1996 WL 417149 (Ohio App. 8th Dist. July 25, 1996); *Riley v. Burnup & Sims Comtec, Inc.*, No. 1–90–113, 1991 WL 216783 (Ohio App. 3rd Dist. Sept. 12, 1991); and *Pinks v. Lowe's Home Centers, Inc.*, No. 3:01 CV 7341 (N.D. Ohio April 15, 2003) *unreported*. Defendant's reliance on these cases is mistaken.[3]

In *Hansen*, the court affirmed the district court's grant of summary judgment to the defendant as the plaintiff primarily assumed the risk of injury when he fell and broke his leg while stepping off his truck after having washed the windshield. *Hansen*, at 215–16. The *Hansen* court explained that the plaintiff had admitted during his deposition that he was aware of the spilled diesel fuel that resulted in slippery conditions, and that these conditions "posed a risk of injury in case he fell while servicing his truck. Flying J, therefore, had no duty to protect Hansen from the known dangers posed by washing his truck windshield in the precarious manner he chose." *Id.* at 216. In contrast, United/Anco employees, not Blevins, removed the handrails at Bowen's direction that created the hazardous condition. (Doc. No. 65, Bowens Aff., ¶ 4; Doc. No. 54, Newman Dep., pp. 47–48).

Likewise, in *Fulton*, the court affirmed the trial court's grant of summary judgment to the defendants based on the doctrine of primary assumption of risk by a plaintiff who was injured when trying to

---

2. In *Eno*, the Supreme Court of Ohio stated: "[I]t is common knowledge that in baseball games hard balls are thrown or batted with great swiftness, that they are liable to be thrown outside the lines of the diamond, and that spectators in positions which may be reached by such balls assume the risk thereof." *Eno*, 147 N.E. at 87.

3. Granted, in *Riley*, the court affirmed the trial court's grant of summary judgment to the defendant. The *Riley* court, however, premised its decision not on primary assumption risk as Defendant contends, but either a lack of proximate cause or comparative negligence. *Riley*, No. 1–90–113, 1991 WL 216783 at *2–3.

remove a manhole cover as part of his inspection of a sewer line junction. The *Fulton* court asserted that the plaintiff knew that there were no guardrails and/or tie-offs, and was aware of the open and obvious drop-off into which he could fall and be injured. *Fulton v. McCarthy Bros. Co.*, No. 69900, 1996 WL 417149 at *4. In *Fulton*, the court also noted that the plaintiff could have requested that properly trained laborers "assigned to assist the inspection team" remove the manhole cover. *Id.* at *4. In contrast, the Plaintiff here did not voluntarily remove the handrails, a task for which United/Anco had specifically contracted. (Doc. No. 30, Blevins Dep. p. 80).

In *Pinks*, this Court found that the defense of primary assumption of risk completely barred the plaintiff's claim that he was injured while voluntarily assisting one of the defendant's employees in retrieving several interior doors that were located on an upper shelf. While it may have been common practice for the defendant's customers to help its employees under these circumstances, nothing in the record indicated that the plaintiff, or other customers, were required to provide such assistance. *Pinks v. Lowe's Home Centers, Inc.*, No. 3:01 CV 7341 at 8. Common sense and knowledge dictated that there was a risk, which may have been reduced, but not eliminated by warnings or other precautions, that a person may be injured when home repair materials such as doors are lowered from an upper shelf by a person standing on a rolling staircase/ladder or forklift, to a person on the ground. *Id.* In contrast, Blevins was working on the modified scaffolding and exposed to the associated risk of injury as part of his regular

employment duties as welder/pipefitter on behalf of Jacobs. He did not voluntarily expose himself to the dangerous condition resulting from the removal of the handrails from the scaffolding. The handrails had to be removed for the placement of a pipe that Blevins and his co-worker were to weld into place.

In fact, in *Carrel v. Allied Prods. Corp.*, 78 Ohio St.3d 284, 677 N.E.2d 795, 801 (1997), the Supreme Court of Ohio reaffirmed its holding in *Cremeans v. Willmar Henderson Mfg. Co.*, 57 Ohio St.3d 145, 566 N.E.2d 1203 (1991) stating:

> [W]e reject appellant's assertion that *Cremeans* abolishes the defense of assumption of the risk in all cases involving a work-related injury. However, we find that this defense is unavailable in those situations where the job duties require the employee to encounter the risk, and the employee is injured while engaging in normal job-related tasks.

United/Anco, however, maintains that several conditions in Jacobs' "Employee and Subcontractor Employee Work Rules and Regulations" (the "rules and regulations") for the project, along with quizzes/tests Plaintiff completed as part of Jacobs' safety orientation program, establish Blevins' primary assumption of risk.[4] (Doc. No. 58, Ex. B). The Jacobs incident report related to Plaintiff's fall as interpreted by Jerry Hammett ("Hammett"), Jacobs' field safety manager for the project, indicates that Plaintiff's attachment of an extra six (6) foot long strap to the lanyard resulted in a fall distance of up twelve (12) feet. (Doc. No. 55, Hammett Dep., pp. 62–63; Ex. A, p. 2). A fall distance of twelve

---

**4.** These quizzes/tests included a true/false contractor quiz, a multiple choice questionnaire entitled "Check Your Safety IQ," and a "Direct Hire Orientation Quiz." Jacobs' safety orientation program also included also included some film(s). (Doc. No. 30, Blevins

Dep., p. 44). While the film(s) only covered scaffolding and harnessing minimally, there were subsequent safety meetings that addressed fall protection. (Doc. No. 55, Hammett Dep., pp. 42, 44–45).

(12) feet would be inconsistent with both OSHA's and Jacobs' own safety rules, which require prevention of all falls of six (6) feet or more. *Id.* at 45–46, 63–64. Hammett also noted that employees were trained to tie-off at a smaller distance than six (6) feet if necessary to avoid striking an object. *Id.* at 47.

On the other hand, Blevins contends that he was properly tied-off with the harness and lanyard, which he was wearing when he fell due to being hit in the head by the bolt. *Id.* at 76, 78, 84. Moreover, Anthony Newman, a Jacob's area foreman who had arrived at the scene after Plaintiff had fallen, testified that the lanyard was "within inches of keeping [Plaintiff] from hitting the tank top." (Doc. No. 54, Newman Dep., pp. 23, 49). He noted that Plaintiff was resting at a slight upward angle on the nozzle of the tank because the lanyard "was so tight." *Id.* at 49–50.

United/Anco also maintains that the rules and regulations together with the quizzes/tests demonstrate that Blevins was aware of his obligation to notify a supervisor or Jacobs' safety representative of a dangerous condition, such as missing handrailings. Admittedly, Blevins acknowledges that he never requested that the missing handrails be replaced, and that the lack of handrailings represented a hazardous situation. (Doc. No. 30, Blevins Dep., p. 82, 109). Further, Newman testified that he would expect a pipefitter/welder to report a safety concern such as missing handrails to either himself or a foreman. (Doc. No. 54, Newman Dep., pp. 45, 116). Nevertheless, the existence of a factual issue as to whether Plaintiff was properly tied-off, also creates a genuine issue of material fact as to whether Blevins violated his obligation to report a hazardous condition.

Defendant also asserts that Plaintiff knew that he could be terminated for violating Jacob's safety rules and regulations. Whether he knew he could be fired for violating the safety rules and regulations, however, is irrelevant for determining whether he primarily assumed the risk of injury. Defendant is not entitled to summary judgment on Plaintiff's claim based on the doctrine of primary assumption of risk.

### C. No Duty and/or Breach of thereof Under the Circumstances

■ United/Anco argues that it neither owed nor breached a duty owed to Blevins under the circumstances as Noel never received an order from Jacobs to replace the handrailings prior to Plaintiff's fall. To succeed on his negligence claim, Blevins must establish that United/Anco owed him a duty, a breach of that duty, causation and injury. *Jeffers v. Olexo*, 43 Ohio St.3d 140, 539 N.E.2d 614, 616 (1989); *Menifee v. Ohio Welding Prods., Inc.*, 15 Ohio St.3d 75, 472 N.E.2d 707, 710 (1984); *Miles v. Kohli & Kaliher Assoc. Ltd.*, 917 F.2d 235, 243 (6th Cir.1990); *Briney v. Sears, Roebuck & Co.*, 782 F.2d 585, 587 (6th Cir.1986); *McConnell v. Cosco, Inc.*, 238 F.Supp.2d 970, 975 (S.D.Ohio 2003). Defendant directs the Court to *Wise v. Zachrich Constr. Co.*, No. 4–89–1, 1990 WL 82549 (Ohio App. 3rd Dist. June 13, 1990) and *Hesselbach v. Toledo Art Museum*, 72 Ohio Misc.2d 33, 655 N.E.2d 831 (1995). In *Wise*, the court affirmed the trial court's grant of summary judgment where the plaintiff was injured after falling from a scaffold that he not only attempted to modify himself but also was using without permission. *Wise*, No. 4–89–1, 1990 WL 82549 at *2–3. Likewise, in *Hesselbach*, the court granted summary judgment holding that there was no evidence that either of the defendants owed a duty to the plaintiff's husband who died after falling from a scaffold he was using to hang wall fabrics as part of renovations

being made to the museum. *Hesselbach,* 655 N.E.2d at 834.

United/Anco's analogy between *Wise* and *Hesselbach,* and the case *sub judice* is without merit. In contrast to the plaintiff in *Wise,* Blevins was assigned to work on the subject scaffold on the day of the incident, and Defendant, not Plaintiff, had altered the scaffolding at Jacobs' direction. Further, unlike in *Hesselbach,* Defendant was contractually responsible for all aspects of scaffolding construction, maintenance and modifications at the project. In fact, for a typical scaffolding modification request Hammett testified:

> Typical modification request would request the modification and an expected duration. But it's generally accepted that the guy who's making the request for the modification would notify the carpenters when he was finished and ready for the modification to be adjusted.

(Doc. No. 55, Hammett Dep., p. 75). Newman provided a like description of the process. (Doc. No. 39, Ex. A, ¶ 6).

Granted, Noel maintains that United/Anco received an instruction to remove the subject handrailings, but was never ordered to replace them. (Doc. No. 29, Noel.Dep., p. 17–19, 38, 40). On the other hand, Bowen, who was Blevins' supervisor contends that he not only directed Noel to have United/Anco remove the railings but also to replace them. Bowen specifically maintains:

> I instructed the foreman of United/Anco, Gib Noel, to have the employee of United/Anco to remove certain railing on the scaffolding on which Gareth Blevins and another employee of Jacobs Engineering were working for the placement of a pipe.
>
> My instruction to Gib Noel included that the placement of pipe would only take a few minutes and that the safety railing on the scaffolding was to be replaced immediately following the placement of pipe.
>
> The above instructions to Gib Noel occurred at approximately 7:30 a.m. Gareth Blevins fell from the scaffolding at approximately 1:30 p.m. on or about January 3, 2000.

(Doc. No. 65, Bowen Aff., ¶¶ 4–6).

It is clear that there exists a genuine issue of material fact as to whether United/Anco received an instruction from Jacobs to replace the railings. Accordingly, Defendant is not entitled to summary judgment based on the argument that it neither owed nor breached a duty to Blevins under the circumstances.[5]

## D. INTERVENING OR SUPERCEDING CAUSE/ LACK OF PROXIMATE CAUSE

■ United/Anco asserts that even if it owed and breached a duty to Blevins, the actions of Jacobs in training and supplying Plaintiff with the harness and lanyard used on the day of the incident,[6] Plaintiff's improper use of the same, and Jacobs' failure to notify Defendant to replace the railings represent intervening and superceding causes, and result in a lack of proximate.

---

**5.** The Court need not consider Plaintiff's argument that United/Anco owed Blevins a duty to ensure the safety of the scaffolding by inquiring into the need to replace the railings on the premise that Defendant was the party responsible for constructing and maintaining the scaffolding at the project. Likewise, it is unnecessary to determine if Defendant owed and breached a duty to Plaintiff based on his understanding that United/Anco was to remain nearby and replace the railings as the entire process of putting the pipe in place would be short.

**6.** Defendant notes that Jacobs' incident report recommends retraining all employees "in the proper use of fall protection equipment." (Doc. No. 55, Hammett Dep., pp. 62–64; Ex. A, p. 2).

In *Leibreich v. A.J. Refrigeration, Inc.* 67 Ohio St.3d 266, 617 N.E.2d 1068, 1071 (1993), the Supreme Court of Ohio stated:

> We have recognized that the existence of intervening and superceding causes of injury can be a defense to actions brought under theories of both negligence and strict liability in tort. *Mudrich v. Standard Oil Co.* (1950), 153 Ohio St. 31, 41 O.O. 117, 90 N.E.2d 859; *R.H. Macy & Co., Inc. v. Otis Elevator Co.* (1990), 51 Ohio St.3d 108, 554 N.E.2d 1313, syllabus.

Whether an intervening act breaks the chain of causation "depends upon whether the intervening actor was a conscious and responsible agency which could or should have eliminated the hazard, and whether the intervening cause was reasonably foreseeable by the one who was guilty of the negligence." *Cascone*, 451 N.E.2d at 819 (quoting *Mudrich*, 90 N.E.2d at 863). "[O]nly those intervening causes which are unforeseeable will be sufficient" to break the chain. *R.H. Macy*, 554 N.E.2d at 1316. "The test . . . is whether the original and successive acts may be joined together as a whole, linking each of the actors as to liability, or whether there is a new and independent act or cause which intervenes and thereby absolves the original negligent actor." *Cascone*, 451 N.E.2d at 819. The *Leibreich* Court also stated:

> We have also repeatedly recognized that the issue of intervening causation generally presents factual issues to be decided by the trier of fact. *Merchants Mut. Ins. Co. v. Baker* (1984), 15 Ohio St.3d 316, 318, 15 OBR 444, 446, 473 N.E.2d 827, 828–829; *Cascone v. Herb Kay Co.*, 6 Ohio St.3d 155, 160, 6 OBR 209, 214, 451 N.E.2d 815, 820 (1983); *Mudrich, supra*, 153 Ohio St. at 40, 41 O.O. at 121, 90 N.E.2d at 864.

Defendant directs the Court to *Sabbaghzadeh v. Shelvey*, No. 98CA007244, 2000 WL 763322 (Ohio Ct.App. 9th Dist. June 14, 2000). In *Sabbaghzadeh*, the appellate court affirmed the trial court's grant of summary judgment on the premise that the plaintiff's failure to maintain an assured clear distance in a traffic collision was a new and independent cause of his own injury. *Sabbaghzadeh*, No. 98CA007244, 2000 WL 763322 at *5–6. The *Sabbaghzadeh* court noted that had the plaintiff maintained the proper clear distance injury would have been avoided. *Id.* at *6.

In the case *sub judice*, the Court has determined that there exists a genuine issue of material fact as to whether Bowen had instructed Noel to replace the railings, and whether Plaintiff was properly tied-off. Moreover, even if Plaintiff had been harnessed in a different manner, there exists a genuine issue of material fact as to whether Blevins would have been injured due to the missing handrailings. Newman testified that "[a] safety harness is to stop you from getting killed. It is not to stop you from getting hurt. If you fall six feet and hit the end of that lanyard, you are probably going to get hurt whether you hit something or not." (Doc. No. 54, Newman Dep., p. 110). Thus, Defendant is not entitled to summary judgment based on intervening or superceding events and lack of proximate cause.

### E. COMPARATIVE NEGLIGENCE

Defendant maintains that in light of Blevins' experience as a pipefitter, including the use of a harness and tie-off requirements, his alleged failure to properly secure his safety harness and otherwise act in compliance with Jacobs' safety rules and regulations, constitutes negligence that is greater than any potential negligence attributable to United/Anco. Defendant also contends that Plaintiff stepped backwards due to inattention/distraction and fell after being struck in the forehead

by a bolt. United/Anco notes that Plaintiff knew the handrails were missing and that the scaffolding had been yellow tagged. "Issues of comparative negligence are for the jury to resolve unless the evidence is so compelling that reasonable minds can reach but one conclusion." *Simmers v. Bentley Constr. Co.,* 64 Ohio St.3d 642, 597 N.E.2d 504, 508 (1992); *Hitchens v. Hahn,* 17 Ohio St.3d 212, 478 N.E.2d 797, 799 (1985).

In other words, "[i]n certain cases, summary judgment is appropriate if the Plaintiff's own negligence, as a matter of law, outweighs any negligence of the Defendant." *Cervelli v. Thompson/Center Arms,* 183 F.Supp2d 1032, 1043–44 (S.D.Ohio 2002) (citing *Riley,* No. 1–90–113, 1991 WL 216783 at *2–3).[7] Given the Court's disposition of Defendant's other arguments in support of summary judgment, and under the circumstances described in the record and as set forth above, reasonable minds could differ as to whether any negligence ascribed to Plaintiff outweighs any potential negligence attributable to United/Anco. Thus, Defendant is not entitled to summary judgment based on comparative negligence.

### CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment (Doc. No. 28) is denied.

IT IS SO ORDERED.

### *JUDGMENT ENTRY*

For the reasons stated in the Memorandum Opinion filed contemporaneously with this entry, IT IS HEREBY ORDERED, ADJUDGED and DECREED that Defendants' motion for summary judgment (Doc. No. 28) is denied.

---

[7]. United/Anco directs the court to *Mitchell v. Ross,* 14 Ohio App.3d 75, 470 N.E.2d 245, 248 (1984), *Earles v. Smith,* No. 99 CA 28, 2000 WL 977896 at *5 (Ohio App. 4th Dist. July 6, 2000) and *Hanson v. Flying J. Travel Plaza,* 161 F.Supp2d 779, 782 n. 1 (N.D.Ohio 2001) as cases affirming summary judgment in favor of the defendants based on comparative negligence.